### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA

**MARY SAYAGO; LEONARDO SAYAGO;**
**CYNTHIA LEWIS; individually and on behalf**
**Of all other similarly situated**                                        **PLAINTIFFS**

**v.**                         **CASE NO.: 8:11-CV-02009-VMP-MAP**

**WELLS FARGO BANK, N.A.**                                          **DEFENDANT**

### MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF LAW

Plaintiffs ask the Court to certify a class of United States residents who have had a mortgage with Wells Fargo and whom Wells Fargo has required to carry flood insurance coverage in excess of the total outstanding loan balance. Plaintiffs seek injunctive relief and damages in the amount of charges paid by class members for flood insurance in excess of that required by their mortgages or federal law. For the reasons set forth below, Plaintiffs meet the Rule 23 criteria for class certification.

### I.      Proposed Class Definition

Plaintiffs propose the following Class definition:

All United States residents with FHA, VA, Fannie Mae, or Freddie Mac mortgages owned or serviced by Wells Fargo Bank, N.A., during the class period who increased their flood insurance coverage to an amount exceeding the principal balance of their first mortgage loan after receiving notice from Wells Fargo stating that they were required to carry flood insurance equal to the replacement value of their property.

### II.     Introduction

#### A.      Defendant's Uniform Practices

The National Flood Insurance Program (NFIP) provides that lenders must require flood insurance on properties located in Special Flood Hazard Areas (SFHAs). The NFIP requires flood insurance coverage in an amount equal to the *lesser* of:  (1) the outstanding balance of the loan; (2) the replacement value of the property; or (3) the NFIP maximum amount of coverage, $250,000. 42 U.S.C. § 4012a(b)(1). Defendant's standard practice is to require borrowers to maintain flood insurance exceeding these amounts. Defendant admits that "its practice is to require borrowers with

1

first mortgages secured by properties located in Special Flood Hazard Areas to maintain flood insurance equal to the replacement cost value of the property."[1] *See* **Exhibit 1**, Tamara Golden Dep. 70:1–6, 101:1–16 Feb. 27, 2012;[2] **Exhibit 2,** Def. Resp. to Req. for Adm. 1, 3, 7, 8. Wells Fargo applies this standard practice even when a borrower's loan balance is far less than the replacement value of the property. **Exhibit 1**, Golden Dep. 70:1–6, 101:1–16; FAC ¶¶ 8–13. Defendant thus requires flood insurance in excess of the amount necessary to protect its interest. FAC ¶ 13.[3]

Wells Fargo services several uniform mortgage types, including Federal Housing Administration (FHA), insured and uninsured conventional (Fannie Mae and Freddie Mac), and VA mortgages. Each of these types of mortgages, except VA mortgages, is written on uniform forms, regulations for VA and FHA mortgages impose uniform requirements for both types of mortgages. Wells Fargo outsources enforcement of its flood insurance requirements to third party vendors and Wells Fargo provides these vendors with uniform procedures dictating its flood insurance requirements. **Exhibit 1**, Golden Dep. 92:2–23. Wells Fargo thus applies identical flood insurance requirements to each of these mortgage types. *Id.* at 70:1–6, 101:1–16.

**B.    Cynthia Lewis's Mortgage is a Uniform FHA Mortgage with Flood Insurance Provisions Identical to Those in All FHA Mortgages in the United States.**

Cynthia Lewis's mortgage is a Federal Housing Administration (FHA) mortgage. **Exhibit 3**, Cynthia Lewis Mortgage. Paragraph 4 of the FHA mortgage requires that she insure her property "against loss by flood to the extent required by the Secretary." "Secretary" refers to the Secretary of Housing and Urban Development (HUD). The HUD Lender's Guide to the Single Family Mortgage

---

[1] As a means to accomplish this blanket policy, Defendant requires flood insurance coverage equal to the amount of hazard insurance the borrower carries. That is, the amount of hazard insurance coverage is used as a proxy to define replacement cost.

[2] Plaintiffs conducted this deposition earlier this week; therefore, Plaintiffs do not have an official copy of the deposition. Relevant portions of the rough draft copy are attached. The attached transcript is redacted in full, but will be filed under seal.

[3] Defendant profits from this practice. Wells Fargo's practices are motivated by an illegal scheme, outlined in contracts with flood insurance vendors, where Wells Fargo receives kickbacks on premiums paid for force-placed insurance. The United States District Court for the Southern District of Florida recently certified a class action against Wells Fargo challenging this kickback arrangement. *Williams v. Wells Fargo Bank, N.A.*, 2012 WL 566067 (S.D. Fla. Feb. 21, 2012).

Insurance Process sets out the Secretary's requirements as follows:

> "National flood insurance is required for the term of the loan and must be maintained in an amount equal to the *least* of the following:
>
> - The development cost of the property, less estimated land cost
> - The maximum amount of the NFIP insurance available with respect to the property improvements, or
> - The outstanding principal balance of the loan(s).

**Exhibit 4**, HUD 4155-2, Lender's Guide to the Single Family Mortgage Insurance Process ("Lender's Guide")(2011)[4], § 4.3.h, p. 4-19 (emphasis in original).[5] HUD's requirements specify that flood insurance should be "equal to" the "least" of the three options. A lender requires more than the "amount required by the Secretary" when it requires flood insurance greater than—rather than "equal to"—the principal loan balance.[6] HUD also publishes a Handbook, "Administration of Insured Home Mortgages."[7] The Handbook provides that a "mortgagee may not insist on more coverage than is necessary to protect its investment." **Exhibit 8**, Handbook, Ch. 2 § 2-11(B). This Handbook was effective in 1994 and the flood insurance requirements therein remain the same today.

Cynthia Lewis's mortgage is written on a standard FHA Model Mortgage Form. The FHA Model Mortgage Form has contained identical language regarding the amount of required flood insurance since the time that Ms. Lewis signed her mortgage in 1998 and remains the same today. *Compare* **Exhibit 3**, Cynthia Lewis Mortgage, *with* **Exhibit 9**, Current FHA Model Mortgage Form, *and* **Exhibit 10**, 2005 version of FHA Model Mortgage Form. HUD *requires* that lenders use the

---

[4] Relevant portions of the Lender's Guide are attached hereto as Exhibit 4. The complete Lender's Guide is *available at* http://www.hud.gov/offices/adm/hudclips/handbooks/hsgh/4155.2/41552HSGH.pdf.

[5] Wells Fargo's own documents acknowledge this requirement and Wells Fargo actually produced the Lender's Guide sections which set out this requirement. *See* **Exhibit 5**, Def. Resp. to Req. for Prod. Bates Nos. 002448–53. Additionally, Wells Fargo produced an internal chart showing hazard and flood insurance requirements for different types of mortgages. **Exhibit 6**, Def. Resp. to Req. for Prod. of Docs., Bates No. 002545. The chart shows that borrowers with FHA mortgages must maintain flood insurance coverage *equal to* the minimum federal flood insurance requirements, as stated in the HUD Lender's Guide.

[6] VA loans have identical requirements as FHA loans. *See* **Exhibit 7**, VA Pamphlet 26-7, Revised, Ch. 9, *available at* www.benefits.va.gov/WARMS/docs/admin26/pamphlet/pam26_7/ch09.doc. The VA Pamphlet provides that "[l]enders may use any note or mortgage form they wish for VA loans," as long as the forms conform to VA regulations. *Id.* at § 9(1)(a), p. 9-2. VA regulations provide that coverage "must be equal to the lesser of the outstanding principal balance of the loan or the maximum limit of coverage available for the particular type(s) of property under the [NFIP]." *Id.* at § 9(10), p. 9-24.

[7] *Available at* http://portal.hud.gov/hudportal/HUD?src=/program_offices/administration/hudclips/handbooks/hsgh/4330.1.

FHA Model Mortgage Form for all FHA mortgages. *See* **Exhibit 4**, Lender's Guide, at 6-B-5 ("Lenders *must* use the *Model Mortgage Form*"). HUD only allows authorized variances from the language in Model Mortgage Forms "as necessary to conform to state or local requirements." *Id.* None of the state or local requirements listed in the Lender's Guide allow any variation in connection with flood insurance. *See id.*, *supra* at 6-B-16 through 6-B-22. Thus, at all times relevant to this case, all FHA mortgages nationwide have contained identical language regarding the amount of flood insurance a lender can require a borrower to carry.

On August 28, 2008, the Federal Emergency Management Agency (FEMA) amended its maps and placed Ms. Lewis's property in a Special Flood Hazard Area. Thus, according to her mortgage, she was required to carry flood insurance equal to the amount "required by the Secretary." At this time, Ms. Lewis's principal loan balance was approximately $50,000, which was significantly less than the replacement cost value of her home or the NFIP maximum ($250,000); therefore, the amount of flood insurance "required by the Secretary" was an amount equal to her outstanding loan balance, or approximately $50,000. **Exhibit 11**, Cynthia Lewis Mortgage Statement.

Wells Fargo sent Ms. Lewis a letter on September 30, 2008, misrepresenting the amount of flood insurance required by her mortgage and federal law, and stating that she "must have flood insurance that provides replacement cost coverage" for her home. *See* **Exhibit 12**, Wells Fargo Letter to Cynthia Lewis. Ms. Lewis obtained a $137,000 flood insurance policy after receiving this demand—$87,000 more than federal law and her mortgage required. She has paid for this excessive flood insurance each year since 2008.

### C.    Mary Sayago and Leonardo Sayago

Plaintiffs Mary and Leonardo Sayago own a home in Tampa, Florida. They refinanced this property in 2007 with a mortgage provided by PFG Loans, Inc. This mortgage was assigned to Wells Fargo concurrently with execution of the mortgage. The basic facts relating to Mary and Leonardo Sayago's situation are the same as those relating to Ms. Lewis, except that the Sayago mortgage

contains slightly different language.

Mary and Leonardo Sayago's mortgage is a Fannie Mae/Freddie Mac Florida Uniform Instrument. **Exhibit 13**, Sayago Mortgage. Paragraph 5 of the Sayagos' mortgage provides that:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that lender requires.

All Fannie Mae/Freddie Mac mortgages contain identical language pertaining to flood insurance requirements. *See* **Exhibit 14**, State by State Analysis of Flood Insurance Provisions of Fannie Mae Standard Mortgage Forms; **Exhibit 15**, State by State Analysis of Flood Insurance Provisions of Freddie Mac Standard Mortgage Forms.[8] The Secretary of HUD has general regulatory authority over Fannie Mae and Freddie Mac, 24 C.F.R. §81.1(a), and requires that lenders use these uniform mortgage forms. **Exhibit 16**, August 7, 2000 letter from Assistant Secretary of HUD, pp. 2–3.[9]

When the Sayagos closed on their loan in 2007, Wells Fargo required, and the Sayagos provided, a certificate of insurance showing that the Sayagos' insurance policy complied with the mortgage and federal law, including flood insurance requirements. On December 9, 2010, Wells Fargo sent the Sayagos a letter, stating that they must obtain additional flood insurance coverage equal to the replacement cost value of their home or Wells Fargo would force-place an expensive policy providing such coverage. The letter stated that replacement cost is "to be determined by you and your insurance agent." According to their November 16, 2009 mortgage statement, the Sayagos' mortgage balance was $162,374.08. **Exhibit 17**, Sayago Mortgage Statement. They had $194,000 in flood insurance coverage at that time. Wells Fargo then purchased temporary flood insurance—an

---

[8]     Standard   Fannie   Mae   Mortgage   Forms   for   all   states   are   available   at https://www.efanniemae.com/sf/formsdocs/documents/secinstruments/. Standard Freddie Mac Mortgage Forms for all states are available at http://www.freddiemac.com/uniform/unifsecurity.html#master_short. The state forms are identical with respect to required flood insurance coverage, except Maine and New York, which express flood insurance requirements in the first person rather than the third person, but are otherwise identical.

[9] This letter may be found on the HUD website, portal.hud.gov/fha/reference/ml2000/00-28ml.doc.

insurance binder—in the amount of $9,000, at an annual cost of $83.75, because Wells Fargo claimed that the Sayagos did not obtain the replacement cost coverage. The Sayagos increased their existing insurance policy to $203,000 to provide the additional $9,000 that Wells Fargo demanded.

## III.  Argument

### A.  Legal Standard

The decision to certify a class action is governed by Federal Rule of Civil Procedure 23. The Court may certify a class if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). A plaintiff must also demonstrate that the case satisfies at least one of the requirements of Federal Rule of Civil Procedure 23(b). Fed. R. Civ. P. 23(b).

"A district court has broad discretion in determining whether to certify a class." *Wilson v. Blue Cross/Blue Shield*, 2011 U.S. Dist. Lexis 133619, *7 (M.D. Fla. 2011)(citing *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992)). In determining whether to certify a class, the Court may consider documents outside the allegations of the complaint, but may not consider the plaintiff's likelihood of success on the merits of the claims. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722–23 (11th Cir. 1992). Plaintiffs' claims meet the requirements under Rule 23(a) and (b); therefore, the Court should grant Plaintiffs' Motion for Class Certification.

### B.  The Proposed Class Satisfies the 23(a) Criteria for Class Certification

Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiffs must satisfy four criteria for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Fed. R. Civ. P. 23(a). Each of these criteria is met in this case.

#### 1.  Numerosity

Plaintiffs' proposed Class satisfies the numerosity requirement. To satisfy the numerosity

requirement, a plaintiff must demonstrate that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[A] plaintiff need not show the precise number of members in the class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). Rather, "reasonable estimates with support as to the size of the proposed class" are sufficient to satisfy this requirement. *Ruderman ex rel. Schwartz v. Wash. Nat. Ins. Co.*, 263 F.R.D. 670, 679 (S.D. Fla. 2010)(quoting *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000)). The "Eleventh Circuit's general rule is that 'less than twenty-one is inadequate, more than forty is adequate, with numbers between varying according to other factors.'" *James D. Hinson Elec. Contracting Co. v. Bellsouth Telecomm., Inc.*, 275 F.R.D. 638 (M.D. Fla. 2011)(quoting *Kuehn v. Cadle Co., Inc.*, 245 F.R.D. 545, 548 (M.D. Fla. 2007); *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). "[W]hen a class is very large, for example, numbering in the hundreds, joinder will be impracticable; but in most cases, the number that will satisfy the Rule 23(a)(1) perquisite should be much lower." 1 Newberg on Class Actions § 3:5, 246 (4th ed. 2002).

Plaintiffs' proposed Class numbers at least in the thousands. Defendant services millions of mortgages. **Exhibit 1**, Golden Dep. 101:19; **Exhibit 18**, Excerpts of Wells Fargo & Co. Annual Report 2010, 2, 6, 157. Wells Fargo is the country's largest mortgage lender. Wells Fargo originated one in four mortgages and serviced one in six mortgages in the United States in 2010 **Exhibit 18**, at 6. In 2008, 2009, and 2010, Wells Fargo serviced $1.781 trillion, $1.796 trillion, and $1.809 trillion in mortgages, respectively. *Id.* at 157. Given that 5,585,797 flood insurance policies were in effect in 2010 alone, it is reasonable to infer that Wells Fargo serviced a "numerous" quantity of mortgages located in SFHAs that were subject to Wells Fargo's standard practice of requiring borrowers to obtain flood insurance equal to their full replacement cost value. **Exhibit 19**, Policy Statistics Country-Wide as of 12/31/2011.[10] Wells Fargo admits that it services thousands of FHA mortgages

---

[10] *Available at* http://bsa.nfipstat.com/reports/1011.htm.

and thousands of Fannie Mae/Freddie Mac mortgages. *See* **Exhibit 2**, Def. Resp. to Req. for Admission, 5–6.[11] Defendant applies its flood insurance requirements uniformly to all of these mortgages. **Exhibit 1**, Golden Dep. 70:1–6, 101:1–16. Although Plaintiffs do not know the exact number of mortgages secured by properties located in SFHAs and serviced by Wells Fargo, one can reasonably infer that this number is at least in the thousands. Thus, a "numerous" quantity of mortgagors are subject to Wells Fargo's standard practice of requiring that borrowers obtain flood insurance equal to hazard insurance coverage. In the event that the Court decides to divide the Proposed Class into Sub-Classes based on the different types of mortgages, each Sub-Class would also satisfy the numerosity requirement.[12]

### 2.   Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009)(quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). "The rule does not require that all of the questions of law or fact raised in the case be common to all the plaintiffs, just that there be at least one issue that affects all or a significant number of proposed class members." *Scantland v. Jeffry Knight, Inc.*, 2011 WL 4530006, at *4 (M.D. Fla. Sep. 29, 2011); *see also*, *Williams v. Mohawk Indus.*, 568 F.3d at 1355 (commonality requires only "that there be at least one issue whose resolution will affect all or a significant number of the putative class members"). "The threshold for commonality is not high . . . [and f]actual differences between class members do

---

[11] When asked to admit that all FHA and Fannie Mae/Freddie Mac mortgages contain language identical to that contained in Plaintiffs' mortgages, Defendant responded that it "would require a manual review of the language in thousands of loan files."

[12] In deposition earlier this week, Wells Fargo's corporate representative testified that Wells Fargo could run a search of its database that would (1) identify every mortgage secured by property located in a flood zone (*i.e.*, every mortgage subject to Wells Fargo's flood insurance requirements), and (2) identify every mortgage by type of mortgage (FHA, VA, Fannie Mae, Freddie Mac). **Exhibit 1**, Golden Dep. 103:1–8, 109:11–25, 110:1–25. Based on these capabilities, Plaintiffs are confident that additional discovery will reveal precise numbers and identities of class members.

not necessarily preclude a finding of commonality. The requirement is met if the questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated." *Scantland*, *supra* (quoting *Clausnitzer v. Federal Express, Inc.*, 248 F.R.D. 647, 656 (S.D. Fla. 2008)).

Plaintiffs' claims meet the commonality requirement. Wells Fargo engages in a uniform practice of requiring that all borrowers maintain flood insurance equal to the replacement cost value of their property, without regard to the borrower's actual outstanding loan balance. **Exhibit 1,** Golden Dep. 69:24–25, 70:1–6, 82:1–2, 101:1–16. Wells Fargo imposes this requirement "across all loans." *Id.* at 70:1–6. Defendant outsources the task of tracking and monitoring flood insurance. **Exhibit 20**, Def. Resp. to Req. for Prod., Bates No. 2418, entitled "Insurance Tracking or Outsourcing." Defendant provides these insurance vendors with uniform procedures detailing its flood insurance requirements. **Exhibit 1**, Golden Dep. 92:2–23.[13] In 2003, Defendant issued a policy change that was communicated to all of its vendors prior to implementation. **Exhibit 21,** Def. Resp. to Req. for Prod., Bates No. 2419–38, at 2419. The change mandated a uniform guideline that flood insurance equal to loan balance was no longer sufficient and required replacement value coverage instead. *Id.* at 2428. The policy applied to "all conventional and government loans," and, with respect to existing loans closed before April 30, 2003, required that borrowers increase their coverage within 45 days. *Id.* at 2419, 2421–22. The same policy applied to condominiums. *Id.* at 2434. This "common wrong" of requiring replacement value coverage for borrowers like Plaintiffs with mortgage balances less than the replacement cost value was a uniform policy applied to all class members.

All FHA mortgages, like Ms. Lewis's mortgage, require that flood insurance must be maintained "in the amounts required by the Secretary." The Secretary of HUD requires *all* FHA

---

[13] Plaintiffs requested copies of these procedures during discovery, but Defendants have not yet produced these procedures. *See* **Exhibit 22**, Def. Resp. to Req. for Prod. of Docs. Nos. 14–16. Defendant's deposition, however, establishes the existence, use, and uniform application of these procedures by Defendant's insurance service vendors. *See*, **Exhibit 1**, Golden Dep. 92:2–23.

mortgages to contain this identical language, and has done so since at least 1998, when Ms. Lewis executed her mortgage. *See* **Exhibit 3**, Lewis FHA Mortgage; **Exhibit 4**, Lender's Guide, at 6-B-5. All VA loans, although written on different forms, have identical requirements—insurance coverage "must be equal to the lesser of the outstanding principal balance of the loan or the maximum limit of coverage available for the particular type(s) of property under the [NFIP]." *See* **Exhibit 7**, VA Pamphlet § 9(10) at 9-24. Similarly, Plaintiffs Mary and Leonardo Sayago have a Uniform Fannie Mae/Freddie Mac mortgage, which, like the FHA mortgage, has contained the same language for many years. *See*, **Exhibit 13**, Sayago Uniform Fannie Mae/Freddie Mac Mortgage; **Exhibit 14**, State by State Analysis of Flood Insurance Provisions of Fannie Mae Standard Mortgage Forms; **Exhibit 15**, State by State Analysis of Flood Insurance Provisions of Freddie Mac Standard Mortgage Forms. All class members' claims flow from the language in these uniform mortgages and Defendant's practice of requiring flood insurance in excess of loan balance. Accordingly, numerous common issues of law and fact are present, including:

> (1)     Whether federal law requires Defendant's customers to purchase and maintain flood insurance coverage exceeding the principal balance of their loans;

> (2)     Whether Defendant breached the mortgage contracts with class members by demanding unauthorized amounts of flood insurance or amounts that were not properly disclosed in its mortgage contracts;

> (3)     Whether the common loan and mortgage documents clearly, conspicuously, adequately, and meaningfully disclose the amount of flood insurance that Defendant requires that its customers maintain; and, if so, whether the loan and mortgage documents authorize Defendant to demand coverage exceeding the principal balance of the loan;

> (4)     Whether Defendant breached its duty of good faith and fair dealing by demanding flood insurance in excess of amounts agreed upon by the parties and greater than the amount necessary to protect Defendant's interests;

> (5)     Whether Defendant's form letters to borrowers misrepresent the applicable federal flood insurance requirements;

> (6)     Whether Wells Fargo violated the Truth in Lending Act by failing to accurately disclose its flood insurance requirements, and by changing its flood insurance requirements after-the-fact and without proper notice or consent;

(7)     The appropriateness and proper form of declaratory and/or injunctive relief for the common benefit of all class members; and

(8)     The appropriateness and proper measure of compensatory damages, statutory damages, restitution, and/or other monetary relief.

The commonality requirement for class certification is established. The controlling questions of law and fact are common to all class members. Wells Fargo required Plaintiffs and all class members to maintain flood insurance in amounts exceeding their outstanding loan balances.[14] This requirement violates each Class member's mortgage. This Court's resolution of whether Wells Fargo can legally require borrowers to maintain flood insurance in excess of their outstanding loan balance will thus resolve each class member's claims.

### 3.     Typicality

The third element for class certification requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]ypicality is met where a class representative is part of the class and possesses the same interest and suffers the same injury as the class members." *Lebron v. Wilkins*, ---F.R.D.---, 2011 WL 6096305, at *4 (M.D. Fla. Dec. 7, 2011)(citing *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)); *see also*, *Fuller*, 197 F.R.D. at 700 (typicality met where "each of the prospective members [of the class] received a variation of the same collection letter as the named plaintiffs"). "Thus, typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Jean v. Torrese*, 2011 WL 5563446, at * 4 (S.D. Fla. Nov. 15, 2011)(citing *Vega*, 564 F.3d at 1275). "The test for typicality, like commonality, is not demanding." *Scantland*, *supra*, at *6.

Plaintiffs' claims meet the typicality requirement because Defendant's conduct and the class claims are based upon the same business practice. Defendant's flood insurance requirements are the

---

[14] Because the mortgages are standard form documents used for the millions of mortgages Wells Fargo services, the Court can easily divide the Class into sub-Classes based on the type of mortgage document if it so chooses. Plaintiffs do not believe that sub-Classes are necessary, however, because the common issue—whether Wells Fargo required too much flood insurance—is common to all Class members, regardless of mortgage type.

same for all borrowers, regardless of individual circumstances. **Exhibit 2**, Def. Resp. to Req. for Admission No. 7, 9; FAC ¶ 121. Plaintiffs' experiences were typical of the class because (1) Plaintiffs' loan and mortgage documents are typical of the class (**Exhibit 3**, Lewis Uniform FHA Mortgage; **Exhibit 13**, Sayago Uniform Fannie Mae/Freddie Mac Mortgage); (2) Plaintiffs received form flood insurance letters that Defendant sent to all class members (**Exhibit 1**, Golden Dep. 36:1–3, 42:4–15; FAC ¶ 120); and (3) Defendant required Plaintiffs, like all borrowers, to purchase and maintain flood insurance coverage in excess of their outstanding loan balance. **Exhibit 1**, Golden Dep. 69:24–25, 70:1–6, 101:1–16; FAC ¶¶ 52, 53, 73, 76, 120. Defendant's flood insurance requirements are the same for all borrowers, regardless of individual circumstances. **Exhibit 2**, Def. Resp. to Req. for Admission, 7–9. The proposed Class Representatives and Class members have been injured in the same way by the same wrongful conduct. The proposed Class Representatives' interests are thus directly aligned with those of the Class and are typical of proposed Class claims.

### 4.      Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)(citing *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157–58, n.13 (1982)). This requirement is met if (1) the named plaintiff has interests in common with, and not antagonistic to, the interests of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975). Both prongs of the "adequacy" test are met here.

The proposed Class Representatives' interests are co-extensive, and do not conflict, with the interests of the Class members. The proposed Class Representatives are ready, willing, and able to represent the class, and have been extensively involved in the prosecution of this case. In fact, each named Plaintiff has already been deposed in this case. Each has testified that he or she strongly

believes that he or she should be allowed to choose whether to maintain enough flood insurance to rebuild their property, and that Wells Fargo should only be allowed to require flood insurance equal to its interest in the property—the principal balance of their loans. *See* **Exhibit 23**, Mary Sayago Dep. 55:21–25, 56:1–2, Feb. 17, 2012; **Exhibit 24**, Leonardo Sayago Dep. 14:21–25, 15:1–25, 16:1–18, Feb. 17, 2012; **Exhibit 25**, Cynthia Lewis Dep. 70:20–25, 71:1–20, 72:1–14, 79:22–25, 80:1–3, Feb. 14, 2012. This is the gravamen of every Class member's claim against Wells Fargo. Thus, the named Plaintiffs' interests align perfectly with those of the Class.

Plaintiffs' Counsel are capable of prosecuting this litigation. Plaintiffs' Counsel have extensive experience in prosecuting securities and consumer fraud class actions. *See* **Exhibits 26–29**, Firm Resumes.[15] As reflected in the respective firm resumes, each of the firms is well-established, possesses extensive knowledge of and experience in prosecuting class actions in courts throughout the United States, and has recovered millions of dollars for their clients.

### C.     The Proposed Classes Satisfy the Rule 23(b) Criteria for Certification

In addition to meeting the mandates of Federal Rule of Civil Procedure 23(a), a plaintiff must also show that the action satisfies at least one of the requirements of Rule 23(b). Plaintiffs' claims satisfy the requirements of Rule 23(b)(1), (b)(2) and (b)(3); thus, class certification is appropriate.

### 1.     Plaintiffs' Claims Satisfy Rule 23(b)(1) Criteria

The Court may certify a class action under Rule 23(b)(1) if "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Courts have interpreted this provision as applying only to actions seeking declaratory or injunctive relief. *See Babineau v. Federal Express Corp.*, 576 F.3d 1183, 1195 (11th Cir. 2009). Plaintiffs' claims assert that Wells Fargo engages in an

---

[15] Plaintiffs' counsel of record are Wagner, Vaughn & McLaughlin P.A. and Carter Walker, PLLC. Firm Resumes for these firms are attached as **Exhibits 26 and 27**. Owings Law Firm and Wagoner Law Firm P.A. are also extensively involved in this case, but are not counsel of record. Firm Resumes for these firms are attached as **Exhibits 28 and 29**.

unlawful business practice, whereby it requires that borrowers maintain flood insurance in excess of their outstanding loan balance. Resolution of this case thus necessarily affects Wells Fargo's standard of conduct with respect to a national class of persons. Individual actions by Class Members create a substantial risk of inconsistent standards of conduct for Defendant.

Plaintiffs ask that this Court enjoin Defendant from "requiring borrowers to obtain flood insurance in amounts exceeding the outstanding balance on their loans; from sending notices to borrowers tending to mislead borrowers into believing that flood insurance amounts requested by Wells Fargo are required by federal law when that is not the case; and from force-placing flood insurance with Wells Fargo subsidiaries, partners, or affiliates." FAC ¶ 174. Some cases, but not others, could result in Defendant being enjoined from requiring flood insurance in amounts exceeding a borrower's loan balance. Some cases, but not others, could result in such conduct being declared unlawful with respect to some class members but not others.

### 2.      Plaintiffs' Claims Satisfy Rule 23(b)(2) Criteria

Plaintiffs' claims for equitable and injunctive relief satisfy the requirements for certification of a class under Rule 23(b)(2). Certification pursuant to Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole." "Requesting a declaration that Defendants presently are violating the law and an injunction forcing defendants to comply with the law is precisely the type of class appropriate for class certification under Rule 23(b)(2)." *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 316 (S.D. Fla. 2001)(citing *Morgan v. Laborers Pension Trust Fund,* 81 F.R.D. 669, 681 (N.D. Cal. 1979)).

Monetary damages are also appropriate for a class certified under Rule 12(b)(2) if the monetary damages requested are "incidental" to the injunctive or declaratory relief. *In re Fla. Cement & Concrete Antitrust Litig.*, 2012 WL 12382, at *6 (S.D. Fla. Jan. 3, 2012). "Money damages are 'incidental' . . . when class members would be 'automatically entitled' to them once

class-wide liability is established." *Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 682 (S.D. Fla. 2007)(citing *In re Consol. Non-Filing Ins. Fee Litig.*, 195 F.R.D. 684, 692 (M.D. Ala. 2000); *Swanson v. Mid. Am., Inc.*, 186 F.R.D. 665, 669 (M.D. Fla. 1999)).

Class certification is appropriate for each of Plaintiffs' claim under Rule 23(b)(2) because Wells Fargo acted pursuant to a standard flood insurance policy and injunctive relief is appropriate to redress wrongs against all class members. Wells Fargo required excessive flood insurance coverage that Plaintiffs' mortgages and federal law do not authorize. Plaintiffs allege that, by engaging in this standardized practice, Wells Fargo (1) breached Plaintiffs' mortgage contracts; (2) breached the implied covenant of good faith and fair dealing; (3) violated the Truth in Lending Act; (4) engaged in unconscionable business practices; and (5) was unjustly enriched. These claims are proper for class certification because a determination of liability for any or all of Plaintiffs' claims will lead to a remedy for all class members. *See* Fed. R. Civ. P. 23(b)(2). Plaintiffs' requested injunctive and declaratory relief would automatically entitle all class members to monetary damages because "monetary damages 'flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or the declaratory relief.'" *See Swanson*, 186 F.R.D. at 669.

Plaintiffs' claims are subject to class-wide relief under Rule 23(b)(2). Wells Fargo's actions pursuant to Plaintiffs' mortgage contracts are common practices that are "generally applicable" to the class. The Court may certify a Rule 23(b)(2) class based on Plaintiffs' breach of contract claims because Defendant's actions were consistent towards all class members. *See In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Mktg. Litig.*, 270 F.R.D. 521, 532–34 (N.D. Cal. 2010); *Jones v. Am. Gen. Life Ins. and Acc. Ins. Co.*, 213 F.R.D. 689, 698 (S.D. Ga. 2002). Wells Fargo's actions pursuant to its standard flood insurance policies also warrant class certification under Rule 23(b)(2) for Plaintiffs' Truth in Lending Act, unconscionability, and unjust enrichment claims. *See*, *Hofstetter v. Chase Home Fin., LLC*, 2011 WL 1225900, *10 (N.D. Cal. Mar. 31, 2011)(certifying class for TILA claims based on the same uniform flood insurance policy at issue in this case); *Fogie v. Rent-*

15

*A-Center, Inc.*, 867 F. Supp. 1398, 1403 (D. Minn. 1993)(certifying class for unconscionability claims based on uniform practice); *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 221, 239 (D. Kan. 2010)(certifying Rule 23(b)(2) class for unjust enrichment claims).

### 3.   Rule 23(b)(3) Criteria

The Court may certify a class under Federal Rule of Civil Procedure 23(b)(3) if it finds that "common questions of law or fact predominate over any questions affecting individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed. R. Civ. P. 23 advisory committee's notes. "In a properly certified Rule 23(b)(3) class, 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'" *Clausnitzer*, 248 F.R.D. at 657 (quoting *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F. 3d 999, 1005 (11th Cir. 1997)). All of Plaintiffs' claims meet the requirements of Rule 23(b)(3).

### a.   Predominance

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc.*, 521 U.S. at 594. This "is similar to the requirement that 'claims or defenses' of the named representatives must be 'typical of the claims or defenses of the class.'" *Id.* at 623, n.18. "Where corporate policies 'constitute the very heart of the plaintiffs' claims,'" common issues predominate because those policies "would necessarily have to be re-proven by every plaintiff" if separate individual actions were maintained. *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 676 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1257 (11th Cir. 2004)(citing *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005)).

16

Plaintiffs' contract-based claims satisfy the predominance requirement. The Eleventh Circuit has held that common issues of law and fact predominate when the contracts entered into by class members are "materially similar." *Allapattah Servs., Inc.*, 333 F.3d at 1261. "[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such. *Sacred Heart Health Sys., Inc. v. Humana Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010)(citing *Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1992)). The breach of good faith and fair dealing is tied to the contract claim and may be "shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct." *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 680. Plaintiffs and class members have standardized form mortgage contracts, and all provisions contained therein that are material to this case are substantially similar. *See* **Exhibit 3**, Lewis Mortgage; **Exhibit 4**, Lender's Guide, at 6-B-5; **Exhibit 13**, Sayago Mortgage; **Exhibit 14**, State by State Analysis of Fannie Mae Uniform Mortgage Forms; **Exhibit 15**, State by State Analysis of Freddie Mac Uniform Mortgage Forms; **Exhibit 7**, VA Pamphlet. If the Court finds that Wells Fargo's flood insurance practices are wrongful, these practices are wrongful as to all class members. Defendant's corporate practices and the legality of those practices thus "constitute the very heart of the Plaintiff's claims." *See In re Checking Account Overdraft Litig*, 275 F.R.D. at 676.

Certification of Plaintiffs' Truth in Lending Act claims is also appropriate under Rule 23(b)(3). "Truth in Lending class actions lend themselves readily to a finding that common questions predominate over individual ones." *Fabricant*, 202 F.R.D. at 316 (quoting 6 Newberg on Class Actions § 21:11, 21–22 (4th ed. 2002)). The court in *Fabricant* held that, where the plaintiff alleged violations of TILA's disclosure requirements and alleged that the defendant provided the same disclosures to all class members, "[t]he core legal and factual issues relating to liability and statutory damages here are not merely common, but identical." 202 F.R.D. at 316. Plaintiffs here allege that Wells Fargo violated TILA when it (1) failed to clearly, fully, and accurately disclose its flood

insurance requirements in its mortgages; (2) misrepresented federal flood insurance requirements in its notices; and (3) adversely changed the terms of Plaintiffs' loans by requiring higher amounts of flood insurance than their mortgages authorized. FAC ¶¶ 149–50. These allegations satisfy the Rule 23(b)(3) requirements because Wells Fargo uses uniform form mortgages and notices and it employs a common practice for determining flood insurance requirements.

Plaintiffs' unconscionability claims are also proper for class certification because the conduct complained of—Defendant's uniform practices—applies equally to all class members. When that is the case, "'it is difficult to conceive of any significant equitable differences between class members.'" *James D. Hinson Elec. Contracting Co.*, 275 F.R.D. at 647 (quoting *Cty. of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 671 (S.D. Fla. 2010)). Wells Fargo's actions, if found to be unconscionable, are unconscionable as to all class members; as such, class certification based on Plaintiffs' unconscionability claim is appropriate. *See Donnelly v. Illini Cash Advance, Inc.*, 2000 WL 1161076 (N.D. Ill. Aug. 16, 2000)(certifying class based on unconscionability claims where "defendants engaged in standardized conduct").

Plaintiffs' unjust enrichment claim is also proper for class treatment. Unjust enrichment claim is an element of damages for some Class members; specifically, Wells Fargo was unjustly enriched when it force-placed some Class members into high-cost flood insurance and received a kickback. FAC ¶168–71. Wells Fargo force-places flood insurance policies pursuant to contractual agreements with its insurance vendors, and these vendors always kick back a portion of the premiums to Wells Fargo. Because this is a uniform, contractual policy, proof of unjust enrichment as to any force-placed Class member will prove unjust enrichment as to all other force-placed Class members. *See Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 436 (S.D.N.Y. 2009)(certifying a class for unjust enrichment claims because "[t]he predominant issue for the unjust enrichment claim is whether [defendant] was enriched at the class' expense"). Additionally, "[t]he 'idiosyncratic differences' between state unjust enrichment laws 'are not sufficiently substantive to predominate

18

over the shared claims.'" *Keilholtz v. Lennox Hearth Prod. Inc.*, 268 F.R.D. 330, 342 (N.D. Cal. 2010)(quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998)).

Defendant may argue that individualized damages inquiries predominate over the common questions of law and fact described above. However, the Eleventh Circuit has stated that "[i]t is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude Rule 23(b)(3) certification." *Klay,* 382 F.3d at 1259–60. The mere fact that individualized damages calculations may be necessary does not defeat predominance of the class action method of litigation. *See, Allapattah Servs. Inc.*, 333 F.3d at 1261; *see also, Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)("No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action.")

Plaintiffs' damages claims are proper for class-wide treatment because damages flow naturally from Defendant's liability. Common questions of law and fact predominate over any individual determinations necessary to determine damages because each Class member suffered from Defendant's common wrong—Defendant's uniform practice of requiring flood insurance in excess of loan balances. **Exhibit 1**, Golden Dep. 69:24–25, 70:1–6, 101:1–16. Proof of liability based on this common scheme necessarily applies to all class members. Moreover, as discussed in the manageability section below, each Class member's damages can be calculated easily from Defendant's records with a simple, mathematical formula. *See Klay*, 382 F.3d at 1259–60 ("where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification.")

### b. Superiority

"The superiority inquiry focuses on 'whether there is a better method of handling the controversy than through the class action mechanism.'" *Cty. of Monroe, Fla.*, 265 F.R.D. at 671

(quoting *Klay,* 382 F.3d at 1269). In determining whether the "superiority" requirement is met, the court must consider the following four non-exclusive factors:

> (A)  the interest of members of the class in individually controlling the prosecution or defenses of separate actions;
>
> (B)  the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)  the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

A principal concern is whether, in the absence of a class action, most members of the class will be deprived of any legal redress because their claims are relatively modest compared to the cost of the litigation. *Amchem,* 521 U.S. at 608 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.")(citing *Mace v. Van Ru Credit Corp*., 109 F.3d 338, 344 (7th Cir. 1997)). "Whether common issues predominate 'has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims.'" *Cty. of Monroe, Fla.*, 265 F.R.D. at 671 (quoting *Klay*, 382 F.3d at 1269). The class action mechanism is a superior means by which to adjudicate Plaintiffs' claims because common issues predominate over individual claims. Analysis of the four factors for consideration in Rule 23(b)(3) exemplifies the superiority of this action as a class action.

### 1.    Interest in Individually Controlling the Case

The first superiority factor identified in Rule 23(b)(3) is "the interests of members of the class in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). This factor addresses whether the interest of most class members in conducting separate

lawsuits is so strong as to require denial of class certification. *See Parker v. Time Warner Entm't Co*., 198 F.R.D. 374 (E.D.N.Y. 2001). Considerations relevant to this inquiry include the degree of "cohesion" among class members, whether "the amounts at stake for individuals . . . [are] so small that separate suits would be impracticable," and the extent to which "separate suits would impose . . . [burdens] on the party opposing the class, or upon the court calendars . . . ." Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendments.

Defendant's practices damaged each class member by several hundred dollars per year. It would be economically impracticable for most putative Class members to retain a private attorney to pursue individual litigation against Defendants. *See* 7A Wright and Miller, Federal Practice and Procedure, § 1779 at 557 ("a group composed of consumers . . . typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure.") Most putative Class members have no overriding interest in conducting separate lawsuits against Defendants. Most of the putative Class members have insufficient monetary incentive or ability to prosecute individual claims against Defendants. Consumers could not afford to hire attorneys to protect their individual interests, and a reasonable cost/benefit analysis would not justify such an action for an individual litigant.

### 2.    Other Litigation

Rule 23(b)(3) also directs that the Court consider "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed. R. Civ. P. 23(b)(3)(B). Plaintiffs are aware of two similar cases against Wells Fargo, both of which were brought as class actions.

*Williams v. Wells Fargo*, *supra*, is a certified class action brought on behalf of a class of Florida residents for Wells Fargo charging allegedly unlawful commissions for various forms of force-placed flood insurance. The *Williams* case is much more limited than this case—the class consists of Florida borrowers who paid for force-placed flood insurance and the claims are limited to

Wells Fargo's kickback scheme in connection with force-placed flood insurance, whereby Wells Fargo received a kickback equal to a percentage (possibly up to 20%) of the premium from the force-placed insurer. Thus, the claims in *Williams* are for damages equal to percentage of the premiums paid for force-placed flood insurance. Plaintiffs' claims here relate to *all* flood insurance—not just force-placed flood insurance. Additionally, the damages sought here equal the *total* amounts paid by class members for flood insurance coverage in excess of loan balance—not just a percentage of the premium. Plaintiffs' claims are much broader than *Williams*; this case is based on Wells Fargo's practice of requiring excessive flood insurance, rather than kickbacks on force-placed insurance. Plaintiffs' claims also seek to redress Wells Fargo's practices on a national basis. Successful resolution of the *Williams* case will not compensate class members in this case whose insurance was not force-placed, nor will it compensate Class members outside the State of Florida; it will only compensate force-placed class members for a fraction of the premiums they paid as a result of Wells Fargo's practices in this case.

*Morris v. Wells Fargo*, Case No. 2:11-cv-00474-DSC (W.D. Pa.), is a putative class action pending in the Eastern District of Pennsylvania alleging that Wells Fargo requires borrowers to maintain excessive amounts of flood insurance. The *Morris* plaintiff has not yet filed a motion for class certification and the Court has made no class certification determinations.

### 3.   Desirability of Forum

The third factor to be considered in analyzing superiority is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). Defendant is subject to this Court's jurisdiction. Defendant is deemed to reside in this District and is subject to personal jurisdiction in this District because Defendant has continuous and systematic contacts with the State of Florida through servicing mortgage loans, and because Defendant sends monthly mortgage statements and offers loans and other services in Florida to Florida residents.

Florida is particularly appropriate for this litigation. As of December 31, 2011, 2,057,953

flood insurance policies were in place in the State of Florida alone—this is more than three times the number of flood insurance policies in any other state. *See* **Exhibit 19**, Policy Statistics Country-Wide.[16] Approximately 37% of all NFIP policies in the entire country insure property in Florida. In 2010, 2,119,132 flood insurance policies were in force in Florida. *See* **Exhibit 30**, Map of NFIP Flood Insurance Policies in Force by State.[17] As such, Florida is a uniquely appropriate forum for resolution of this matter.

### 4.    Manageability

Finally, the Court must consider "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). Manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 164 (1974). "This concern will rarely, if ever, be in itself sufficient to prevent certification of a class." *Klay*, 382 F.3d at 1272. Construing this standard, Judge Corrigan of the this District stated that "we are not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives (including, most notably, [thousands of] separate lawsuits by the class members)." *James D. Hinson Elec. Contracting Co.*, 275 F.R.D. at 648 (quoting *Klay*, 382 F.3d at 1272–73). "Courts are generally reluctant to deny class certification based on speculative problems with case management. Even potentially severe management issues have been held insufficient to defeat class certification." *Id.* Moreover "where a court has already made a finding that common issues predominate over individualized issues, [the court] would be hard pressed to conclude that a class action is less manageable than individual actions." *Id.*

Management of this case as a class action presents no unusual difficulties. Defendant has a means to identify every member of the class, and calculation of damages incurred by each class

---

[16] *Available through* http://www.fema.gov/business/nfip/statistics/pcstat.shtm

[17] *Available at* http://www.fema.gov/library/viewRecord.do?id=4565

member involves a relatively simple calculation. Defendant's corporate representative testified that (1) Wells Fargo can run a search on its internal database system to determine every class member whose property is currently in a flood zone (**Exhibit 1**, Golden Dep. 109:11–21); (2) Wells Fargo can determine every individual who was in a flood zone during the past five years (*Id.* at 109:22–25, 110:1–9); and (3) Wells Fargo can identify every individual who received an insufficient flood insurance notice during the past five years (*Id*. at 110:10–25, 111:1–12.) Each of Wells Fargo's third party insurance vendors update Wells Fargo's internal database system to reflect the date and form identifier number for every flood insurance letter sent to Wells Fargo's borrowers. *Id.* at 36:22–25, 37:1–3, 11–23, 100:14–22. Wells Fargo's database also enables it to identify Class members by type of mortgage; thus, if the Court decides to divide the Proposed Class into Sub-Classes based on mortgage types, Wells Fargo can search its database and identify Sub-Class members by type of mortgage. *Id.* at 77:6–25, 78:1–25, 79:1–5, 103:1–8.

Additionally, the need for individual damages calculations does not preclude class certification. *Klay*, 382 F.3d at 1259–60. Damages can be easily determined from Wells Fargo's database and archives. Damages equal the difference between the premiums Wells Fargo required Class members to pay for replacement cost coverage and the cost of premiums the borrower would have paid for coverage equal to the principal balance of their mortgage. Defendant's corporate representative testified that two vendors monitor flood insurance premiums paid and flood insurance coverage maintained by borrowers for mortgage loans. **Exhibit 1**, Golden Dep. 49:11–21, 50:3–7, 69:16–25, 70:1–2, 71:3–7, 73:11–25, 74:1–2, 98:6–17. She further testified that these vendors enter this information into Defendant's database. *Id.* at 48:10–25, 49:1–8, 50:3–7, 99:16–25, 100:14–22. In addition, Defendant's database shows borrowers' principal loan balance at any given time. *Id.* at 105:17–25, 106:1–16. She testified that this information is available on Defendant's database for the past two years and is available for at least five years in Defendant's archives. *Id.* at 106:7–25, 107:1–3, 11–25, 108:1, 8–23. She also testified that Defendant's vendors can simply provide this

information. *Id.* at 56:6–19, 99:10–15, 100:7–13, 106:17–25, 107:1–3. Proving damages for every class member, therefore, is a matter of finding the numbers on Wells Fargo's database, and then performing a mechanical calculation.

Class treatment of this action will also eliminate the possibility of repetitious litigation or inconsistent rulings on the same operative facts. Indeed, non-class treatment of the claims asserted here would present insurmountable difficulties. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)(class action plaintiffs may pool claims that are uneconomical to litigate individually); *see also Klay*, 382 F.3d at 1273 ("we are not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives (including, most notably, . . . separate lawsuits by the class members)"). Managing this litigation as a class action promotes judicial economy. Thus, the manageability factor weighs in favor of class certification in the present action.

## IV.     CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that this Court grant this Motion for Class Certification, thus certifying the Class as previously defined and designating Cynthia Lewis, Mary Sayago, and Leonardo Sayago as Class Representatives.


Respectfully Submitted,

**Attorneys for Plaintiffs**

By: /s/ Kevin McLaughlin

Kevin McLaughlin (FL Bar No.0085928)
**WAGNER, VAUGHAN & McLAUGHLIN, P.A.**
601 Bayshore Boulevard, Suite 910
Tampa, FL 33606
(813) 225-4000
(813) 225-4010 (facsimile)
Kevin@Wagnerlaw.com

-and-

Russell D. "Davy" Carter, III (*pro hac vice*)
**CARTER WALKER, PLLC**
Post Office Box 628
Cabot, AR 72023
(501) 605-1346
(501) 605-1348 (facsimile)
dcarter@carterwalkerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing:

Michael K. Winston
E-mail: mwinston@carltonfields.com
David B. Esau
E-mail: desau@carltonfields.com
**CARLTON FIELDS, P.A.**
525 Okeechobee Blvd., Suite 1200
West Palm Beach, Florida 33401

*Attorneys for Defendant Wells Fargo Bank, N.A.*

/s/ Kevin McLaughlin